IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CLORDIA NOVELLA HAWTHORNE, | : |
| Plaintiff, | : |
| v. | : Civil Action No. |
| | : 1:21-CV-03885-SDG-JCF |
| LOUIS DEJOY, Postmaster General, | : |
| Defendant. | : |

## FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendant's Motion To Dismiss Amended Complaint. (Doc. 15). For the reasons discussed below, it is **RECOMMENDED** that Defendant's motion be **GRANTED**.

## Procedural History

Plaintiff, who is proceeding *pro se*, requested leave to file a complaint without prepayment of fees or security pursuant to 28 U.S.C. § 1915(a). (Doc. 1). Plaintiff was employed by the United States Postal Service, and she completed a form employment discrimination complaint alleging that Defendant discriminated against her because of her race or color, i.e., "Black Hawk Indian, Cuban, etc."; her national origin (presumably Cuban); her age (born in 1965); and because of her "opposition to a practice of my employer that I believe violated the federal anti-discrimination

1

laws or my participation in an EEOC investigation." (Doc. 2 ¶ 13). Plaintiff did not specify under which employment discrimination statute she brought her claim (*see id.* ¶ 1), but the Court presumes she intended to bring her claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"). Plaintiff alleged the following in support of her claims:

> I as an employee of the USPS, had been treated equal [sic] as other employees in my workplace. I was belittled by Postmaster and Management in front of peers. I received 1 days week schedule for 4 or 5 months, while other less sensority [sic] employees received full work week. I had been removed from my position for hitting an undamaged mailbox. I was not giving protocol steps like peers. I was removed from my position for 18 months. I was informed by management to drive an defective vehicle or go home. The gauge gear was unidentified to shift correct gears. There was a lot of disrespectful situation in this workplace environment. I can not list it all on this paper. I had siblings managing and showing favoritism in front of employees. Greater work schedule and off time was given to these individual.

(Doc. 2 ¶ 14).

The Court granted Plaintiff's request to proceed *in forma* pauperis, but upon review of her Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) & (ii), the undersigned found that "Plaintiff's conclusory allegations of discrimination and retaliation—devoid of any factual enhancement about who took these actions, when they were taken, and whether they were taken because of Plaintiff's statutorily protected characteristics and/or activity—are plainly insufficient to state a claim for

which relief can be granted under either Title VII or the ADEA." (Doc. 3 at 4). The Court directed Plaintiff to file an amended complaint in which she:

> describes the specific employment action(s) she alleges to be discriminatory (e.g., disciplinary action, demotion, failure to promote, termination, etc.), the date each action occurred, who took the action, whether that person was a co-worker or supervisor, and what facts support her belief that the action was taken because of her race, color, national origin, and/or her age. If Plaintiff contends that Defendant retaliated against her in violation of Title VII and/or the ADEA, she must state when and how she engaged in statutorily protected activity under Title VII and/or the ADEA, what action was allegedly taken in retaliation for that activity, who took that action, when that action was taken, and what facts support her belief that the action was taken because she engaged in statutorily protected activity under Title VII and/or the ADEA.

(*Id*. at 5).

Plaintiff then filed an Amended Complaint (Doc. 5), and the Court allowed the action to proceed (Doc. 6). In her Amended Complaint, Plaintiff alleges that Defendant discriminated against her because of her race ("Black Hawk Indian, Cuban") and gender, presumably in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and she also alleges that Defendant retaliated against her, presumably in violation of Title VII. (Doc. 5 ¶ 1). In allowing the Amended Complaint to proceed, the Court found that:

> [l]iberally construing the allegations in Plaintiff's Complaint, the Court does not find that Plaintiff's action is frivolous and will allow this case to proceed as any other civil action. By allowing this action to proceed to service on Defendant, the Court makes no finding that Plaintiff's claims would necessarily withstand a motion to dismiss and reaches no conclusions about possible defenses Defendant may assert. It is simply

allowing the complaint to be served on Defendant, thus requiring a responsive pleading and/or motion. *See, e.g.*, *Livingston v. City of Syracuse*, No. 7:15-CV-475 (GLS/ATB), 2015 U.S. Dist. LEXIS 54261, at *8 (N.D. N.Y. Apr. 27, 2015) ("Based on the liberality with which pro se complaints are handled, this court will allow this action to proceed. This court makes no finding as to the ultimate merits of the case or whether it would survive a motion to dismiss or one for summary judgment.").

(Doc. 6 at 3). Defendant then moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.[1] (Doc. 15). Plaintiff did not respond to the motion.

**Discussion**

I.     **Plaintiff's Failure To Respond**

The Local Rules required Plaintiff to either oppose or respond to Defendant's motion to dismiss within seventeen (17) days. *See* LR 7.1(B), NDGa.; *see also* FED. R. CIV. P. 6(d). Plaintiff did not respond, so Defendant's motion to dismiss is unopposed. *See* LR 7.1(B) ("Failure to file a response shall indicate that there is no

---

[1] Defendant also moves to dismiss the Amended Complaint for insufficient service of process under Rule 12(b)(5). (Doc. 15 at 2 n.1). Because the undersigned finds that Plaintiff's Amended Complaint is subject to dismissal for failure to state a claim on which relief can be granted, the undersigned does not reach Defendant's insufficient service of process argument. The undersigned is also reluctant to recommend dismissal on that ground because Plaintiff was granted *in forma pauperis* status, and "[t]he Court and U.S. Marshal [are] responsible for assisting *pro se* litigants proceeding *in forma pauperis* with service of process." *Brazill v. Peterson*, No. 2:17-cv-394-FtM-38CM, 2018 U.S. Dist. LEXIS 152457, at *2 (M.D. Fla. Sept. 7, 2018) (citing 28 U.S.C. § 1915(d), FED. R. CIV. P. 4(c)(3), and *Richardson v. Johnson*, 598 F.3d 734, 739-40 (11th Cir. 2010)).

opposition to the motion."); *Simpson v. Countrywide Home Loans*, Civil Action No. 1:10-CV-0224-CAM-ECS, 2010 U.S. Dist. LEXIS 81389, at *9 (N.D. Ga. Apr. 26, 2010) (claims in a motion to dismiss that are not addressed by plaintiff are deemed unopposed), *adopted by* 2010 U.S. Dist. LEXIS 81384 (N.D. Ga. Aug. 11, 2010). An unopposed motion to dismiss is not automatically due to be granted: "rather, the Court is still required to consider the merits of the motion." *Jackman v. Hasty*, No. 1:10–CV–2485–RWS, 2012 U.S. Dist. LEXIS 57893, at *5 (N.D. Ga. Apr. 24, 2012); *see also Davis v. Bank of America, N.A.*, No. 1:11–cv–4552–JEC–RGV, 2012 U.S. Dist. LEXIS 128290 (N.D. Ga. Sept. 10, 2012) (the moving party does not automatically prevail on an unopposed motion to dismiss). Accordingly, the undersigned must consider the merits of Defendant's motion to determine whether dismissal of Plaintiff's Amended Complaint is proper.

## II.   Sufficiency Of Plaintiff's Pleading

Defendant argues that the Court should dismiss Plaintiff's Amended Complaint because she has failed to state a Title VII discrimination or retaliation claim on which relief can be granted. (Doc. 15).

### A.   Applicable Standards

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED R. CIV. P. 8(a)(2). That standard "does not require 'detailed factual allegations,' but it demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

"Additionally, because Plaintiff [is] acting pro se, [her] 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.' " *Shields v. Bank of Am.*, No. 2:11-CV-00267-RWS, 2012 U.S. Dist. LEXIS 30183, at * 3 (N.D. Ga. Mar. 6, 2012) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). " 'This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action.' " *Id.* (quoting *Thomas v. Pentagon Fed. Credit Union*, 393 Fed. Appx. 635, 637 (11th Cir. 2010)).

B. <u>**Allegations In Amended Complaint**</u>

Plaintiff asserts that managers and supervisors "discriminated against her by

promoting other employees with less seniority, removal from work schedules, physical attacks, Nepotism with siblings in the workplace because of her race (Black Hawk Indian, Cuban) and Gender (Female)." (Doc. 5 ¶ 1). Plaintiff further asserts that she "believes management retaliated against her for contacting the United States Postal Service Headquarters about the unequal treatment, abuse of power, unscheduled work, and Notice of Removal." (*Id*.). The Court construes those assertions as Title VII race and sex discrimination and retaliation claims, although Plaintiff did not cite to Title VII in her Amended Complaint. In support of her claims, Plaintiff alleges the following: On March 28, 2018, Plaintiff returned to her rural carrier position from FMLA leave, and two supervisors, Damanda Camacho and Bryant Landers, accused her of disposing of work mail. (Doc. 5 ¶ 2). In April 2018, Ms. Camancho poked Plaintiff in the arm with a sharp object, and in the same month brushed her body against Plaintiff. (*Id*. ¶ 3). Plaintiff reported these incidents to Charly Nicuis (Postmaster), but "no action was taken on this physical abuse." (*Id*.). Camacho was allowed to supervise Camacho's sibling, Miranda Godfrey, and "[n]epotism was displayed by . . . Camacho . . . toward her sibling . . . in front of other employees." (*Id*.). Plaintiff "took initiative to contact Ms. Megan Brennan (Postmaster-General) about the discrimination and hostile work environment she was experiencing." (*Id*.). Also in April 2018, the steering wheel on her work vehicle came off, but "[t]he incident was never documented nor investigated." (*Id*. ¶ 4). On

7

July 12, 2018, Plaintiff was not permitted to return to work following medical leave until mid-August 2018. (*Id*. ¶ 5). In August 2018, Plaintiff reported "an unsafe-operated vehicle," i.e., a problem with the gear shift gauge, to Camacho, and Lawrence Goss (Postmaster) told her "if she could not operate the vehicle to go home." (*Id*. ¶ 6). Plaintiff reported to work the next day, but she was removed from her work schedule, and later Plaintiff was scheduled to work one day a week for four to five months. (*Id*.).

In February 2019, co-worker Angela Alexander, another rural carrier, was walking behind Plaintiff saying, "We don't want you here," "Go back where you came from," and "We don't know how you got promoted to a regular carrier." (*Id*. ¶ 7). Alexander had an empty tray in her hand as she followed Plaintiff, and she was "[a]lleging [sic] to hit Plaintiff with the tray." (*Id*.). Plaintiff left the workplace and called the station manager. (*Id*.). Plaintiff did not state in her Amended Complaint what she told the station manager or what the station manager said. (*See id*.). On April 2, 2019, supervisor Millie Snowden called Plaintiff to report to work, and while Plaintiff was servicing the route, she "had an incident involving an undamaged mailbox[.]" (*Id*. ¶ 8). On May 9, 2019, Goss issued Plaintiff a Notice of Removal, but Goss did not sign the Notice, and "Plaintiff was not given proper protocol for a first-time incident." (*Id*. ¶ 9). Plaintiff was removed from her position as a Regular Rural Carrier for 18 months. (*Id*.).

8

## C.     Title VII Discrimination Claims

Defendant argues that the Court should dismiss Plaintiff's Title VII race and sex discrimination claims "because she failed to allege any facts that could plausibly connect her race or sex to any adverse actions or show how an otherwise similarly situated person was treated differently." (Doc. 15 at 5). The undersigned agrees.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Thus, to state a claim for race or sex discrimination under Title VII, Plaintiff must allege, at a minimum, facts that would "allow[ ] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendant subjected her to an adverse employment action because of her race or sex. *See* 42 U.S.C. § 2000e-2(a); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) ("To state a race-discrimination claim under Title VII, a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race discrimination.' " (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)). "The complaint 'need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case.' " *Surtain*, 789 F.3d at 1246 (quoting *Davis*, 516 F.3d at 974). "This is because *McDonnell Douglas's* burden-shifting framework is an evidentiary standard, not a pleading

9

requirement." *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). "Although Plaintiff is not required to plead a *prima facie* case of discrimination in order to survive [a] motion to dismiss, the elements of a *prima facie* case of discrimination 'are a useful guide to determining whether h[er] complaint states a claim [for race or sex discrimination] plausible enough to survive scrutiny under *Iqbal* and *Twombly*.' " *Ogidi-Gbegbaje v. Western Express*, No. 1:17-CV-00936-WSD-JFK, 2017 U.S. Dist. LEXIS 164642, at *7-8 (N.D. Ga. Aug. 18, 2017) (quoting *Johnson v. Blount Cnty.*, No. 2:16-cv-01215-JHE, 2017 U.S. Dist. LEXIS 44160, at *7 (N.D. Ala. Mar. 27, 2017)), *adopted by* 2017 U.S. Dist. LEXIS 164379 (N.D. Ga. Oct. 4, 2017). Those elements are: (1) Plaintiff is a member of a protected class; (2) she was qualified for her job; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably or she was replaced by someone outside her protected class. *See Hudson v. Middle Flint Behavioral Healthcare*, 522 Fed. Appx. 594, 596 (11th Cir. 2013); *Curtis v. Broward Cnty.*, 292 Fed. Appx. 882, 883 (11th Cir. 2008). It appears that Plaintiff is also alleging a discriminatory hostile work environment. To support a hostile work environment claim, Plaintiff must allege facts that plausibly show:

> (1) [sh]e belongs to a protected group; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on h[er] membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a

> hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Edwards v. Prime Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010).

Plaintiff has alleged that she is a member of a class protected under Title VII, i.e., Black Hawk Indian, Cuban, and a woman (Doc. 5 ¶ 1), and the Court assumes for the sake of discussion that Plaintiff has alleged that she was qualified for her job. Plaintiff alleges several negative actions that were taken against her: in March 2018 her supervisors accused her of disposing of work mail; in April 2018 her supervisor Camacho poked her in the arm with a sharp object and later "brushed her body against Plaintiff," and the vehicle steering wheel became detached while Plaintiff was servicing a route; in July 2018 Plaintiff was not permitted to return to work after medical leave and did not return for duty until mid-August; in August 2018 Plaintiff reported that the shift gear gauge was defective on her work vehicle, and she was told to go home, taken off the work schedule the next day, and thereafter was only scheduled to work one day a week for four to five months; in February 2019 co-worker Angela Alexander followed Plaintiff and said, "We don't want you here," "Go back where you came from," and "We don't know how you got promoted to a regular carrier," while "[a]lleging [sic] to hit Plaintiff" with an empty tray; and in May 2019, Goss issued Plaintiff a Notice of Removal, and Plaintiff was removed from her position for 18 months, apparently for hitting a mailbox. (Doc. 5 ¶¶ 2-9).

Plaintiff appears to have sufficiently alleged that at least some of the above-described actions were adverse employment actions for purposes of her Title VII discrimination claims. "When a complained-of adverse employment action is not an 'ultimate employment decision,' such as a termination, failure to hire, or demotion, the conduct at issue must substantially alter 'the employee's compensation, terms, conditions, or privileges o[f] employment, [or] deprive him or her of employment opportunities.' " *McQueen v. Ala. Dep't of Trans.*, 769 F. App'x 816, 821 (11th Cir. 2019) (quoting *Crawford v. Carroll*, 529 F.3d 961, 970–73 (2008) (internal quotations omitted)). "[T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001).

Under that standard, Plaintiff has arguably alleged that Defendant subjected her to an adverse employment action by not allowing her to return to work after her medical leave in July 2018 until August 2018, only scheduling her to work one day a week for four to five months, and removing her from her position for 18 months, assuming those actions were accompanied by some loss of pay or other benefits, which is not clearly alleged in the Amended Complaint. Plaintiff has not shown that the rest of the complained-of actions were adverse employment actions because she has failed to allege facts to plausibly show that they resulted in a serious and material

change in the terms, conditions, privileges of her employment.

But even if the Court considers all of the actions described in Plaintiff's Amended Complaint as supporting her disparate treatment and/or hostile work environment claims, Plaintiff's race and sex discrimination claims fail because she failed to allege facts that raise a reasonable inference that Defendant subjected her to an adverse employment action or discriminatorily hostile work environment because of her race or sex. Plaintiff has not alleged that she was replaced by an employee outside of her protected class(es), nor has she alleged facts to show that similarly situated employees outside of her protected class(es) were treated more favorably. Although Plaintiff alleges that her supervisor, Damanda Camacho, showed unspecified "nepotism"—presumably Plaintiff means "favoritism"—to Camacho's sibling Miranda Godfrey, a carrier who Camacho supervised (Doc. 5 ¶ 3), Plaintiff has alleged no facts that plausibly demonstrate that Camacho's apparently more favorable treatment of her sibling was due to race or sex, as opposed to the fact that the employee was Camacho's family member. Nor has Plaintiff alleged that her managers and supervisors made derogatory remarks based on her race or sex or that they made statements that raise an inference that they took the challenged actions because of her race or sex. Plaintiff alleges that a co-worker, Angela Alexander, followed her around one day and told her, "We don't want you here," "Go back where you came from," and "We don't know how you got promoted

13

to a regular carrier" (Doc. 5 ¶ 7), but even if those comments could be construed as a negative reference to her race, Plaintiff has not alleged that Alexander was a supervisor or manager or that she took any adverse employment action against Plaintiff. Nor is that one possibly race-related incident sufficient to show that Plaintiff was subjected to harassment based on her race or sex that was "severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment." *Edwards*, 602 F.3d at 1300.

While Plaintiff has described several negative actions and workplace tribulations, she has not alleged facts that plausibly show that Defendant subjected her to those actions because of her race or sex. Thus, her discrimination claims fail. *See Davis*, 245 F.3d at 1239 ("Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." (quotations omitted)); *see also Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (explaining that "Title VII addresses *discrimination*" and "is not a shield against harsh treatment at the workplace" (emphasis in original) (quotations omitted)). Plaintiff's conclusory allegation that her supervisors and managers discriminated against her because of her race and gender (Doc. 5 ¶ 1) are insufficient. *See, e.g.*, *Delk v. Hub*, No. 1:18-CV-5635-MHC-CCB, 2020 U.S. Dist. LEXIS 256331, at *18 (N.D. Ga. May 27, 2020) ("In the absence of any further non-conclusory facts supporting her age discrimination claim, Plaintiff's allegations are

insufficient to establish a plausible claim of age discrimination, and dismissal is appropriate."); *Bell v. State Farm Ins. Co.*, No. 2:18-CV-00015-RWS-JCF, 2018 U.S. Dist. LEXIS 249310, at *5-6 (N.D. Ga. Apr. 18, 2018) ("Plaintiff provides little to no factual support for her belief that these actions were taken *because of* her race, disability, or in retaliation for engaging in statutorily protected activity. Plaintiff's conclusory allegations of discrimination and retaliation are insufficient to meet the pleading standards of Rule 8, *Twombly* and *Iqbal*."). Because Plaintiff has not alleged facts that would "allow[] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendant subjected her to an adverse employment action or discriminatorily hostile work environment because of her race or sex in violation of Title VII, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's Title VII race and sex discrimination claims be **DISMISSED**.

D.     **Title VII Retaliation Claim**

Defendant argues that the Court should dismiss Plaintiff's Title VII retaliation claim because "she does not sufficiently allege that she participated in any protected activity nor does she allege a causal connection between any protected activity and an adverse personnel action." (Doc. 15 at 7). The undersigned agrees.

To support a retaliation claim under Title VII she must allege facts that plausibly suggest that Defendant took materially adverse action against her for engaging in statutorily protected activity. *See* 42 U.S.C. §§ 2000e-3(a). "To state a

15

claim for retaliation under Title VII, a plaintiff must allege the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse action." *Arafat v. Sch. Bd.*, 549 Fed. Appx. 872, 874 (11th Cir. 2013) (unpublished decision) (citing *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001)).

Plaintiff "believes management retaliated against her for contacting the United States Postal Service Headquarters about the unequal treatment, abuse of power, unscheduled work, and Notice of Removal." (Doc. 5 ¶ 1). That conclusory allegation about Plaintiff's belief is insufficient to support her retaliation claim. Moreover, it appears to indicate that Plaintiff made her alleged complaint after she received her Notice of Removal, so the incidents described in this lawsuit, including the May 2019 Notice of Removal, occurred *before* she allegedly engaged in statutorily protected activity. Thus, her retaliation claim fails for lack of causal connection. *See Manley v. Dekalb Cnty*, 587 F. App'x 507, 512 (11th Cir. 2014) (explaining that "if the alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected").

In setting forth the facts in support of her claims (Doc. 5 ¶¶ 2-9), Plaintiff did not allege any facts that plausibly show that she engaged in statutorily protected activity, i.e., that she made a complaint that she was subjected to discrimination

16

*because of her race or sex* or that Defendant retaliated against her for making such a complaint. (*See* Doc. 5). Plaintiff alleges that she told Postmaster Charly Nicuis that Camacho poked her in her arm and brushed against Plaintiff, but she did not allege that she told Nicuis that those incidents occurred because of her race or sex (Doc. 5 ¶ 3), so she has not shown that that complaint was statutorily protected activity under Title VII. Plaintiff also alleges that at some unidentified point she "took initiative to contact Ms. Megan Brennan (Postmaster-General) about the discrimination and hostile work environment she was experiencing." (Doc. 5 ¶ 3). But Plaintiff did not allege when she contacted Brennan or what she told Brennan. Critically, Plaintiff does not allege that she told Brennan that the discrimination and hostile work environment was based on her race or sex. Nor does Plaintiff allege facts that she had been subjected to discrimination and hostile work environment because of her race or sex when she "took initiative to contact" Brennan. Thus, Plaintiff has not shown that her "contact" with Brennan was statutorily protected activity under Title VII. *See, e.g.*, *Jeronimus v. Polk Cnty Opportunity Council, Inc.*, 145 F. App'x 319, 326 (11th Cir. 2005) (finding that email complaining about being "singled out," being subjected to "a campaign of harassment," and working in a "hostile environment" was not statutorily protected activity because the plaintiff "never suggested that this treatment was in any way related to his race or sex").

17

Moreover, Plaintiff has alleged no facts that plausibly show that any decisionmaker with respect to any subsequent acts of retaliation was aware of Plaintiff's purported complaints to Nicuis and Brennan. Thus, even if Plaintiff had shown that those complaints were statutorily protected activity, she has not plausibly alleged a causal connection between her purported complaints to Nicuis and Brennan and any subsequent alleged retaliation. *See, e.g.*, *Gladden v. Proctor & Gamble Distrib. LLC*, No. 1:19-CV-2938-CAP-JSA, 2021 U.S. Dist. LEXIS 210941, at *136-37 (N.D. Ga. July 26, 2021) ("In order to establish a causal connection between protected conduct and an adverse employment action, however, '[a]t a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action.'" (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)).

Plaintiff has not otherwise alleged that she complained about race or sex discrimination or retaliation for making such complaints. She alleges that she twice informed her supervisors about work vehicle defects (Doc. 5 ¶¶ 4, 6), and she made a phone call to a station manager in February 2019, presumably about co-worker Angela Alexander's alleged "attack," but Plaintiff did not allege what she told the station manager; she simply alleges that she "made a phone call to [the station manager]" (Doc. 5 ¶ 7). Plaintiff has not alleged facts that plausibly show that she complained that those incidents occurred because of her race or sex and were thus

statutorily protected activity under Title VII, nor has she alleged what allegedly retaliatory actions were taken thereafter or alleged facts that plausibly demonstrate a causal connection between those reports and any subsequent retaliation.

Because Plaintiff has not alleged facts that would "allow[] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendant retaliated against her for engaging in statutorily protected activity under Title VII, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's Title VII retaliation claim be **GRANTED**.

### Summary

Because Plaintiff's Amended Complaint (Doc. 5) fails to state a claim for which relief can be granted, it is **RECOMMENDED** that Defendant's Motion To Dismiss Amended Complaint (Doc. 15) be **GRANTED**.

The Clerk is directed to terminate the reference of this case to the undersigned Magistrate Judge.

**IT IS SO REPORTED AND RECOMMENDED** this 27th day of June 2023.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge